Patrick T. Perkins (PP 1694)
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, New York 10516
Tel: (845) 265-2820
Fax: (845) 265-2819
pperkins@ptplaw.com

*Attorney for Plaintiffs*

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ DEC ⁻9 2011 ★

BROOKLYN OFFICE

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**CV11 - 6023**

DISNEY ENTERPRISES, INC.,
HANNA-BARBERA PRODUCTIONS, INC.,
SANRIO, INC. and DC COMICS,

**SUMMONS ISSUED**

      Plaintiffs,

Case No.:

v.

**COMPLAINT**

ADOLPH RODRIGUEZ d/b/a PROFESSIONAL
KIDS ENTERTAINMENT, LLC and d/b/a
CLOWNS BRONX; and
PROFESSIONAL KIDS ENTERTAINMENT,
LLC d/b/a
CLOWNZ BRONX,

      Defendants.

HURLEY, J.

      Plaintiffs Disney Enterprises, Inc., Hanna-Barbera Productions, Inc., Sanrio, Inc. and DC Comics (hereinafter collectively referred to as "Plaintiffs"), by and through their undersigned attorneys, allege for their Complaint as follows:

### INTRODUCTION

      1.    This action has been filed by the Plaintiffs to combat the willful and intentional infringement of their copyrighted properties and trademarks, and includes claims of copyright infringement, federal trademark infringement, unfair competition and related state law claims.

Defendants Adolph Rodriguez and Professional Kids Entertainment, LLC are the owners, operators, and managers of a retail business, that is actively advertising, marketing, renting, offering rental services, selling, offering for sale, and/or distributing unauthorized children's party services in conjunction with unauthorized reproductions of the Plaintiffs' copyrighted and trademarked properties.

2.      Plaintiffs seek a Permanent Injunction, damages, costs, a disgorgement of profits and attorneys' fees as authorized by the Copyright Act, the Lanham Act and New York law.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338(a) & (b) as the Plaintiffs' cause of action arises under The Copyright Act, 17 U.S.C. § 101 et seq., and the Federal Trademark Act of 1946 (the"Lanham Act"), 15 U.S.C. § 1051 et seq.  Further, this Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper within the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

## THE PARTIES

### Plaintiffs

5.      Plaintiff, Disney Enterprises, Inc. (hereinafter referred to as "Disney"), is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in Burbank, California.

a.      Disney, or one of various subsidiary companies wholly owned by Disney, is engaged in a variety of businesses, including the operation of the Walt Disney World resort complex and Disneyland park, producing and distributing motion pictures and television programs, operating stores and hotels, producing and selling books, records and tapes, and

providing entertainment. A significant aspect of Disney's business is the merchandising and licensing of distinctive elements associated with its motion pictures and television programs including, but not limited to, the world-famous fanciful characters Mickey Mouse, Minnie Mouse, Donald Duck, Daisy Duck, Goofy, Pluto, Winnie the Pooh, Piglet and Tigger, as well as from Disney's animated motion pictures, including, but not limited to, "Pinocchio," "The Lion King," "Aladdin," "Beauty and the Beast," "The Little Mermaid," "Snow White and The Seven Dwarfs," "Pocahontas," "Hunchback of Notre Dame," "Hercules," "Mulan," "Toy Story," "The Emperors New Groove," and "Lilo and Stitch. Disney also jointly owns the copyrights to the feature movies "A Bug's Life," "Tarzan," "Monsters, Inc.," "Finding Nemo" and "The Incredibles." (hereinafter collectively referred to as "Disney Copyrighted Movies and Characters").

      b.    Each of the Disney Copyrighted Movies and Characters noted in subparagraph a. above is covered by a copyright registration with the U. S. Copyright Office. Various copyright registrations were made in the name of Walter E. Disney. In October 1934, Walter E. Disney assigned his copyrights to Walt Disney Productions Ltd. ("WDPL"), and filed a copy of such assignment ("The Assignment") with the Copyright Office. In September 1938, WDPL and Walt Disney Enterprises ("WDE") and Liled Realty and Investment Company, Ltd., were consolidated into Walt Disney Enterprises. A copy of the consolidation agreement was filed with the Copyright Office. In December 1938, pursuant to an amendment to its articles of incorporation, Walt Disney Enterprises changed its name. A copy of the 1938 certificate of amendment of the articles of incorporation ("The 1938 Name Change") to Walt Disney Productions ("WDP") was filed with the Copyright Office. In February 1986, pursuant to an amendment to its articles of incorporation, WDP changed its name to The Walt Disney

Company. A copy of the 1986 certificate of amendment ("The 1986 Name Change") was filed with the Copyright Office. In February 1996, pursuant to further amendment to its articles of incorporation, The Walt Disney Company again changed its name to Disney Enterprises, Inc. A copy of the 1996 certificate of amendment ("The 1996 Name Change") was filed with the Copyright Office. Some, but not all of the applicable copyright registrations covering the characters and properties noted in subparagraph a are indexed on Exhibit "A".

        c.     Disney also owns all rights, title, and interest in and to, and holds the exclusive rights to market and sell merchandise bearing the trademarks, trade names, service marks, artwork, characters and other distinctive elements for and related to the Disney Characters (hereinafter referred to as the "Disney Trademarks"). Disney adopted one or more of the Disney Trademarks for diverse articles and registered their trademarks with the United States Patent and Trademark Office. The Disney Trademarks are indexed on Exhibit "B".

6. Hanna–Barbera Productions, Inc. (hereinafter referred to as "Hanna-Barbera") is a corporation, duly organized and existing under the laws of Delaware and having its principal place of business in Burbank, California.

        a.     Hanna-Barbera is engaged in the business of creating, developing and producing animated programs for television, home video and theatrical release. One television program created and produced by Hanna-Barbera is the television show *Scooby-Doo, Where Are You?,* which holds the record for the longest running, continuously produced children's cartoon, having first been created in 1969. In 2002, Warner Bros. distributed a feature-length motion picture entitled *Scooby-Doo: The Movie,* which grossed more than One Hundred Million Dollars ($100,000,000.00) at the domestic box office alone. In 2004, Warner Bros. distributed a feature-length motion picture entitled *Scooby-Doo2:Monsters Unleashed,* which grossed more than

Eighty Million Dollars ($80,000,000.00) at the domestic box office alone. Additional sales have been generated from the international box office, from release of the motion pictures in home viewing formats, including VHS and DVD and by licensing various television rights.

b. The revenue from products and services using the Hanna-Barbera Characters sold in the United States is substantial. The design, configuration and distinctive features of the Hanna-Barbera Characters and other Hanna-Barbera copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as the "Hanna-Barbera Copyrighted Designs") are wholly original with Hanna-Barbera and, as fixed in various tangible media, including, without limitation, merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., § 101 et seq. Hanna-Barbera is the owner of the Hanna-Barbera Copyrighted Designs and, as featured on and in connection with various merchandise, these designs constitute copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, et seq.

c. Hanna-Barbera has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to the Hanna-Barbera Copyrighted Designs, and Hanna-Barbera owns one or more certificates of registration for works in which the Hanna-Barbera Copyrighted Designs appear. Some, but not all of the applicable copyright registrations covering the Hanna-Barbera Copyrighted Designs are indexed in Exhibit "A".

d. Products and services featuring the Hanna-Barbera Copyrighted Designs which are manufactured, sold and distributed by Hanna-Barbera or under its authority have been manufactured, sold and distributed in conformity with the provisions of the copyright laws. Hanna-Barbera and those acting under its authority have complied with their obligations under

the copyright laws and Hanna-Barbera has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights in each of the Hanna-Barbera Copyrighted Designs.

e.  Hanna-Barbera, through its exclusive licensing agent, Warner Bros. Consumer Products, a division of Warner Bros., has authorized and licensed the manufacture, distribution and sale of various different types of products and services bearing the Hanna-Barbera Copyrighted Designs. These products and services include, but are not limited to, toys, games, costumes and apparel.

f.  Hanna-Barbera is the owner of world famous registered and unregistered marks that serve to distinguish its products (hereinafter the "Hanna-Barbera Trademarks"). Each year Hanna-Barbera spends millions of dollars to develop and maintain the considerable good will it enjoys in its trademarks and in its reputation for high quality. The appearance and other features of the Hanna-Barbera Characters are inherently distinctive and serve to identify Hanna-Barbera as the source of products and services bearing the Hanna-Barbera Characters.

g.  The Hanna-Barbera Trademarks are valid, extant and in full force and effect and are exclusively owned by Hanna-Barbera. Hanna-Barbera has continuously used the Hanna-Barbera Trademarks from a date earlier than any upon which the defendants may rely and at all times relevant to the claims alleged in this Complaint. Hanna-Barbera adopted one or more of the Hanna-Barbera Trademarks for diverse articles and registered their trademarks with the United States Patent and Trademark Office. Some of the registered Hanna-Barbera Trademarks are indexed on Exhibit "B".

h.  As a result of advertising and sales, together with longstanding consumer acceptance, the Hanna-Barbera Trademarks identify Hanna-Barbera's products and services and

authorized sales of these products and services. The Hanna-Barbera Trademarks have acquired secondary meaning in the minds of consumers throughout the United States and the world. Hanna-Barbera Copyrighted Designs and the Hanna-Barbera Trademarks are collectively referred to herein as the "Hanna-Barbera Properties".

7.      Plaintiff, Sanrio, Inc., is a corporation duly organized and existing under the laws of the State of California, having its principal place of business in San Francisco, California. Sanrio is a wholly owned subsidiary of Sanrio Company, Ltd. Sanrio Company, Ltd. is a corporation organized under the laws of Japan, having its principal place of business in Tokyo, Japan (hereinafter referred to as "Sanrio Company").

a.      For more than forty years, Sanrio Company has been engaged in the business of manufacturing, distributing and selling a wide range of products including, without limitation, character artwork created, developed and designed by Sanrio Company for use by children and young adults. Certain of the characters and designs have achieved such global fame and popularity that Sanrio Company has produced and distributed television programming for children based on the character artwork. One such television program is the animated television series entitled *Hello Kitty*.

b.      A significant source of revenue for Sanrio Company is the merchandising and licensing of distinctive elements bearing character artwork, including Bad Badtz Maru, Chococat, Hello Kitty, KeroKeroKeroppi, Landy, Little Twin Stars, Monkichi, My Melody, Patty and Jimmy, Pekkle, Picke Bicke, Pochacco, Tuxedo Sam, Winkipinki, and Zashikbuta (hereinafter individually and collectively referred to as the "Sanrio Company Characters").

c.      The revenue from products using the Sanrio Company Characters sold in the United States is substantial. The appearance and other features of Sanrio Company's Properties

are inherently distinctive and serve to identify Sanrio Company as the source of products bearing the Sanrio Company Characters. The design, configuration and distinctive features of the Sanrio Company Characters and other Sanrio Company copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as the "Sanrio Company Copyrighted Designs") are wholly original with Sanrio Company and, as fixed in various tangible media including, without limitation, merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., § 101, *et seq.* Sanrio Company is the owner of the Sanrio Company Copyrighted Designs and, as featured on and in connection with various merchandise, these designs constitute copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* Some, but not all of the applicable copyright registrations covering the characters and properties noted above in subparagraph b are indexed on Exhibit "A".

d.     Sanrio Company has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to Sanrio Company's Copyrighted Designs, and Sanrio Company owns one or more certificates of registration for works in which each of Sanrio Company's Copyrighted Designs appear. Sanrio Company's Copyrighted Designs manufactured, sold, and distributed by Sanrio Company or under its authority have been manufactured, sold, and distributed in conformity with the provisions of the copyright laws. Sanrio Company and those acting under its authority have complied with their obligations under the copyright laws. Sanrio, as the exclusive United States licensee for Sanrio Company, is authorized to enforce all right, title, and interest in and to the copyrights in each of Sanrio Company's Copyrighted Designs.

e.     Sanrio Company owns all right, title, and interest in and to and holds exclusive rights to develop, manufacture, market, and sell products bearing the trademarks, trade

names, service marks, artwork, characters, and other distinctive elements for and incorporating Sanrio Company's Characters.

      f.      Sanrio Company is the owner of world famous registered marks, which serve to distinguish Sanrio Company products. Some of those trademarks have been used continuously for over twenty-five years. Each year Sanrio Company spends millions of dollars to develop and maintain the considerable good will it enjoys in its trademarks and in its reputation for high quality (hereinafter collectively referred to as the "Sanrio Company Trademarks").

      g.      The Sanrio Company Trademarks are all valid, extant, and in full force and effect. The Sanrio Company Trademarks are exclusively owned by Sanrio Company. Sanrio Company has continuously used each of Sanrio Company Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint. Some of the relevant Sanrio Company Trademarks are indexed on Exhibit "B".

      h.      As a result of advertising and sales, together with longstanding consumer acceptance, the Sanrio Company Trademarks identify Sanrio Company's products and authorized sales of these products. The Sanrio Company Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world. Since issuance of the registrations, Sanrio Company has given notice that the marks are registered pursuant to 15 U.S.C. § 1111 by displaying the registration symbol "®". Sanrio, as the exclusive United States licensee for Sanrio Company, is authorized to enforce all right, title, and interest in and to the trademarks in each of the Sanrio Company Trademarks.

      i.      Through Sanrio, Sanrio Company has authorized and licensed the manufacture and sale of various different types of product, which bear the "Sanrio Company Properties" including, but not limited to, soft sculpture toys, mirrors, and similar products.

8.     Plaintiff, DC Comics (hereinafter referred to as "DC") is a New York General Partnership consisting of E.C. Publications, Inc. and Warner Communications Inc., having its principal place of business in New York, New York.

a.     DC is one of the largest and most well known publishers of comic magazines in the world.   Among DC Comics' most well-known and highly successful characters are "Batman", "Superman" (and the related character "Super Girl") and "Wonder Woman" (hereinafter collectively referred to as "DC Characters").   In addition to its core publishing business, DC Comics also licenses the DC Characters for exploitation in entertainment products in a variety of media, including but not limited to, motion pictures, television programs, and video and computer games. These licensed entertainment uses have been enormously popular as demonstrated by publicly available box office revenue figures.   For example, Superman and Batman motion pictures alone have generated hundreds of millions of dollars in box office revenues.

b.     In addition, DC Comics, through its exclusive licensing agent, Warner Bros. Consumer Products, a division of Warner Bros., has authorized and licensed the manufacture, distribution and sale of a wide array of consumer products bearing the DC Characters.   These products include, but are not limited to, toys, games, costumes, and apparel.

c.     The revenue from products and services using the DC Characters sold in the United States is substantial. The appearance and other features of the DC Characters are inherently distinctive and serve to identify DC and its licensees as the source of products and services bearing the DC Characters.

d.     The design, configuration and distinctive features of the DC Characters and other DC Comics copyrighted works, and of works related thereto (hereinafter individually and

collectively referred to as the "DC Copyrights") are wholly original with DC Comics and are copyrightable subject matter under the United States Copyright Act, 17 U.S.C. § 101 *et seq.* DC Comics is the owner of the DC Copyrights and DC Comics has compiled in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the DC Copyrights. DC owns one or more certificates of registration for works in which each of the DC Copyrights appear. Some, but not all, of the applicable copyright registrations covering the DC Copyrights are indexed on Exhibit "A".

e.     DC owns all right, title, and interest in and to and holds the exclusive right to develop, manufacture, market, and sell products bearing the trademark, trade names, service marks, artwork, characters, and other distinctive elements for and incorporating the DC Characters (hereinafter referred to as the "DC Trademarks"). DC adopted one or more of the DC Trademarks for diverse articles and registered such trademarks with the United States Patent and Trademark Office.  The DC Trademarks are indexed on Exhibit "B".  Each year DC spends significant sums to develop and maintain the considerable goodwill it enjoys in the DC Trademarks and in its reputation for high quality.

f.     The DC Trademarks are valid, extant and in full force and effect.  The DC Trademarks are exclusively owned by DC Comics, which has continuously used them from a time before any date upon which defendants may rely and at all times relevant to the claims alleged in this Complaint.

g.     As a result of advertising and sales, together with longstanding consumer acceptance, the DC Trademarks identify DC Comics' products and services and authorized sales of these products and services.  The DC Trademarks have acquired secondary meaning in the minds of consumers throughout the United States and the world.

9.    The Disney Copyrighted Movies and Characters, the Hanna-Barbera Copyrighted Designs, the Sanrio Company Copyrighted Designs and the DC Comics Copyrights will hereinafter collectively be referred to as the "Plaintiffs' Copyrighted Properties".

10.    The Disney Trademarks, the Hanna-Barbera Trademarks, the Sanrio Company Trademarks and the DC Trademarks will hereinafter collectively be referred to as the "Plaintiffs' Trademarked Properties".

11.    The Plaintiffs' Copyrighted Properties and the Plaintiffs' Trademarked Properties will hereinafter be collectively referred to as the "Plaintiffs' Copyrighted Properties and Trademarks".

**Defendants**

12.    Defendant, Adolph Rodriguez doing business as Professional Kids Entertainment LLC and doing business as Clowns Bronx, is, upon information and belief, an officer, founder and controlling force in the operation of Professional Kids Entertainment, LLC and is doing business as Professional Kids Entertainment, LLC and as Clowns Bronx, located at the following addresses: 58 Robert Avenue, Elmont, New York, 11003, 243 5th Avenue, New York, New York 11003 and 1057 Hempstead Turnpike, Franklin Square, New York 11010. Additionally, Defendant is doing business through the Internet via the websites located at the domains www.bookyourkidsparty.com and www.clownsbronx.com and through his Facebook page located at the domain, www.facebook.com/pages/Professional-Kids-Entertainment.

13.    Defendant, Professional Kids Entertainment, LLC, doing business as Clowns Bronx is, upon information and belief, a New York corporation whose principal place of business is 58 Robert Avenue, Elmont, New York, 11003. Professional Kids Entertainment, LLC conducts business through the Internet via the websites located at the domains

www.bookyourkidsparty.com and www.clownsbronx.com and through its Facebook page located at the domain, www.facebook.com/pages/Professional-Kids-Entertainment.

14.     Defendants will hereinafter be referred to as "Professional Kids Entertainment" or "Defendants".

## INFRINGING CONDUCT

15.     Defendants are in the business of advertising, marketing, renting, offering rental services, selling, offering for sale, and/or distributing unauthorized children's party services in conjunction with the reproduction of the Plaintiffs' Copyrighted Properties and Trademarks through the use of unauthorized character costumes (hereinafter referred to as "Themed Party Services"). *See* Exhibit "C".

16.     Defendants advertise, market, rent, offer rental services, sell, offer for sale, and/or distribute the Children's Party Services through their websites located at the domains, www.bookyourkidsparty.com and www.clownsbronx.com and through their Facebook page located at the domain, www.facebook.com/pages/Professional-Kids-Entertainment. *See* Exhibit "C".

17.     Plaintiffs have never authorized or licensed Defendants to rent, offer rental services, sell, offer for sale, give, provide, solicit, and/or distribute these Themed Party Services, which include or incorporate the Plaintiffs' Copyrighted Properties and Trademarks.

18.     Plaintiffs sent a letter to Defendants demanding that Defendants cease and desist their infringing conduct. Plaintiffs did not receive a response. Plaintiffs sent a second letter to Defendants demanding that Defendants cease and desist their infringing conduct. Notwithstanding Plaintiffs' cease and desist letters, Defendants continue to advertise, market,

rent, offer rental services, sell, offer for sale, and/or distribute the Themed Party Services bearing the Plaintiffs' Copyrighted Properties and Trademarks.

19.      Even after Defendants received actual notice that they were infringing on Plaintiffs' intellectual property rights, they continued to advertise, market, rent, offer rental services, sell, offer for sale, and/or distribute the Themed Party Services. Upon information and belief, Defendants' unrelenting infringing activity is willful.

20.      Plaintiffs have in the past received complaints concerning individuals who have provided Themed Party Services featuring one or more of the Plaintiffs' Copyrighted Properties and Trademarks, which products and/or services were not authorized by Plaintiffs.

21.      Because Plaintiffs did not authorize or license Defendants' Themed Party Services, they cannot control the quality and nature of the character costumes and the quality of the individual(s) providing the products and/or services.

COUNT I - COPYRIGHT INFRINGEMENT

22.      Plaintiffs bring the following claim of copyright infringement against Defendants and incorporate by reference allegations 1 through 21 above.

23.      Defendants are advertising, marketing, renting, offering rental services, selling, offering for sale and/or distributing Themed Party Services in conjunction with unauthorized reproductions of the Plaintiffs' Copyrighted Properties, including but not limited to, "Mickey Mouse", "Minnie Mouse", "Winnie the Pooh", "Donald Duck", "Buzz Lightyear", "Handy Manny", "Lil Einstein", "Scooby-Doo" "Hello Kitty" and "Super Girl". Photographs of the infringing Themed Party Services are attached as Exhibit "C".

24.      Defendants have never been authorized by Plaintiffs to copy, distribute or publicly display the Plaintiffs' Copyrighted Properties; nor have Plaintiffs ever authorized,

14

licensed, or in any manner allowed Defendants the right to advertise, market, rent, offer rental services, sell, offer for sale, and/or distribute any merchandise including, but not limited to, character costumes or related merchandise which bear any of Plaintiffs' Copyrighted Properties.

25.      Defendants have advertised, marketed, rented, offered rental services, sold, offered for sale, and/or distributed Themed Party Services, which incorporate Plaintiffs' Copyrighted Properties, in direct violation of Plaintiffs' copyrights. Defendants committed their acts with actual as well as constructive knowledge of Plaintiffs' exclusive rights. Defendants' actions have contributed to the infringing advertising, marketing, copying, duplication, rental, offering of rental services, sale, offer for sale and distribution of counterfeit copies of Plaintiffs' Copyrighted Properties. Each act by Defendants that infringes one of Plaintiffs' copyrights is the basis for a separate claim against Defendants under the Copyright Act.

26.      Upon information and belief, Defendants' acts as alleged are willful infringements of and have irreparably harmed Plaintiffs' copyrights and exclusive rights and threaten further infringements and further irreparable harm to Plaintiffs' copyrights and exclusive rights. Further harm and injury to Plaintiffs is imminent, and Plaintiffs are without an adequate remedy at law with respect to such harm and injury. Unless Defendants' acts are enjoined and the illicit counterfeiters of Plaintiffs' Copyrighted Properties are stopped, it is highly probable that Defendants, or others under their direction will advertise, market, rent, offer rental services, sell, offer for sale, and/or distribute additional Themed Party Services which utilize Plaintiffs' Copyrighted Properties causing further irreparable injury to Plaintiffs.

27.      Defendants have obtained gains, profit, and advantages as a result of their wrongful acts noted above.

28.     Plaintiffs are entitled, at their option, to statutory damages as provided by 17.U.S.C. § 504 in lieu of actual damages and Defendants' profits.

## COUNT II - TRADEMARK INFRINGEMENT AND COUNTERFEITING

29.     Plaintiffs bring the following claim of trademark infringement against Defendants and incorporate by reference paragraphs 1–21 and bring the following claim for trademark infringement pursuant to 15 U.S.C. § 1114 against Defendants.

30.     Plaintiffs own or are licensees of the exclusive rights to Plaintiffs' Trademarked Properties indexed on Exhibit "B". All of the trademark registrations are in full force and effect and are owned by Plaintiffs or Plaintiffs' licensors. Many of the trademarks are incontestable pursuant to 15 U.S.C. § 1065.

31.     Plaintiffs, or those under their authority, manufacture and distribute all of their advertising and products in conformity with the provisions of the United States trademark law.

32.     Notwithstanding Plaintiffs' or their licensors' well-known and prior statutory rights in the registered trademarks, Defendants, with actual and constructive notice of Plaintiffs' federal registration rights and long after Plaintiffs' established their rights, have adopted and used the trademarks in conjunction with the advertisement, marketing, renting, offering of rental services, sale, offering for sale, and/or distribution of Themed Party Services in the State of New York and interstate commerce.

33.     Defendants have advertised, marketed, rented, offered rental services, sold, offered for sale, and/or distributed Themed Party Services bearing Plaintiffs' Trademarked Properties, including, but not limited to, "Mickey Mouse", "Minnie Mouse", "Winnie the Pooh", "Donald Duck", "Scooby-Doo", "Hello Kitty" and "Super Girl", without Plaintiffs' authorization. Defendants' advertisement, marketing, renting, offering rentals services, sale,

offer for sale, and/or distribution of the Themed Party Services bearing Plaintiffs' Trademarked Properties in New York and interstate commerce has and will cause the likelihood of confusion, deception, and mistake in that the buying public will conclude that Defendants' products and/or services are authorized, sponsored, approved, or associated with Plaintiffs.

34.     Said acts of infringement will cause irreparable injury to Plaintiffs if Defendants are not restrained by the Court from further violation of Plaintiffs' rights as Plaintiffs have no adequate remedy at law.

35.     Plaintiffs have suffered damages as a result of Defendants' acts.

36.     Defendants' use in commerce of Plaintiffs' Trademarked Properties in conjunction with the advertisement, marketing, renting, offering rental services, sale, offering for sale, and/or distribution of the Themed Party Services is an infringement of Plaintiffs' registered trademarks in violation of 15 U.S.C. § 1114(1).

37.     Defendants committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly, and oppressively with the intent to injure Plaintiffs and their businesses.

38.     The Themed Party Services bearing Plaintiffs' Trademarked Properties that Defendants advertised, marketed, rented, offered rental services, sold, offered for sale, and/or distributed constitutes a counterfeit product pursuant to 15 U.S.C. § 1116(d)

## COUNT III - UNFAIR COMPETITION UNDER THE LANHAM ACT

39.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-21 and 30-38 above.

40.     As a direct result of Plaintiffs longstanding use, sales, advertising, and marketing, Plaintiffs' Trademarked Properties have acquired a secondary and distinctive meaning among the

public who have come to identify Plaintiffs' Trademarked Properties with Plaintiffs and their respective products and/or services.

41.     The Themed Party Services that Defendants have advertised, marketed, rented, offered rental services, sold, offered for sale, and/or distributed exactly duplicates and appropriates Plaintiffs' Trademarked Properties and deludes and confuses the public into believing that Plaintiffs approved, authorized, or sponsored the Themed Party Services advertised, marketed, rented, offered rental services, sold, offered for sale, and/or distributed by Defendants.

42.     Defendants, by misappropriating and using the likenesses of Plaintiffs' Trademarked Properties in connection with the advertisement, marketing, renting, offering of rental services, sale, offering for sale, rental, and/or distribution of Themed Party Services are misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of her products and/or services.

43.     Defendants have caused such products and/or services to enter into interstate commerce willfully with full knowledge of the falsity of the designation of their origin and description and representation in an effort to mislead the purchasing public into believing that their products and/or services are authorized or emanate from Plaintiffs.

44.     These acts constitute a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

45.     Defendants have obtained gains, profits, and advantages as a result of their unlawful acts.

46.     Plaintiffs have suffered monetary damages as a result of Defendants' acts.

## COUNT IV – TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER

## NEW YORK'S COMMON LAW

47.     Plaintiffs repeat and reallege paragraphs 1–21, 23-28, 30-38, and 40-46 of this Complaint.

48.     Plaintiffs have expended significant sums of money in advertising and marketing, which feature their products and/or services, and in creating a consumer demand for such products and/or services in New York and elsewhere in the United States. Consequently, these products and/or services have become widely known and accepted.

49.     Defendants have advertised, marketed, rented, offered rental services, sold, offered for sale, and/or distributed Themed Party Services bearing exact copies of Plaintiffs' Trademarked Properties in New York, thereby passing them off as products and/or services authorized and/or distributed by Plaintiffs.

50.     Defendants have knowingly and willfully appropriated Plaintiffs' Trademarked Properties in an effort to create the impression that Defendants' counterfeit products and/or services are sanctioned by Plaintiffs and to misappropriate all of the goodwill associated with Plaintiffs' Trademarked Properties.

51.     Defendants' acts constitute trademark infringement and unfair competition and will, unless enjoined by this Court, result in the destruction or dilution of the goodwill in Plaintiffs' Trademarked Properties and of Plaintiffs' valuable trademark rights to the unjust enrichment of Defendants.

52.     The Themed Party Services that are advertised, marketed, rented, offered for rent, sold, and/or distributed by Defendants are calculated and likely to deceive and mislead the purchasers in the belief that they originate with or are authorized by Plaintiffs.

53.     The continued passing off by Defendants of such unauthorized Themed Party Services as if such products and/or services originated from the Plaintiffs have caused and, unless restrained, will continue to cause serious and irreparable injury to Plaintiffs.

54.     Plaintiffs have no adequate remedy at law and suffer irreparable harm as a result of Defendants' acts.

55.     Plaintiffs have suffered damages as a result of Defendants' acts.

56.     Defendants committed the alleged acts intentionally, fraudulently, maliciously, willfully, wantonly, and oppressively with the intent to injure Plaintiffs and their businesses.

**COUNT V – DECEPTIVE TRADE PRACTICES UNDER NEW YORK STATE LAW**

57.     Plaintiffs repeat and reallege paragraphs 1–21, 23-28, 30-38, and 40-56 of this Complaint.

58.     Plaintiffs have expended significant sums of money in advertising and marketing, which feature their products and/or services, and in creating a consumer demand for such products and/or services in New York and elsewhere in the United States. Consequently, these products and/or services have become widely known and accepted.

59.     Defendants have advertised, marketed, rented, offered rental services, sold, offered for sale, and/or distributed Themed Party Services bearing exact copies of Plaintiffs' Trademarked Properties in New York, thereby passing them off as products and/or services authorized and/or distributed by Plaintiffs.

60.     Defendants have knowingly and willfully appropriated Plaintiffs' Trademarked Properties in an effort to create the impression that Defendants' counterfeit products and/or services are sanctioned by Plaintiffs and to misappropriate all of the goodwill associated with Plaintiffs' Trademarked Properties.

61.     By virtue of the above-referenced acts, Defendants have been and are engaged in deceptive acts or practices in the conduct of a business, trade or commerce in violation of Section 349 of the New York General Business Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand entry of a judgment against Defendants as follows:

1.     Permanent injunctive relief restraining Defendants, their officers, agents, servants, employees, attorneys, and all those in active concert or participation with them from:

a.     further infringing Plaintiffs' copyrighted properties, trademarks, and licensed trademarks by providing products and/or services, producing, distributing, circulating, selling, marketing, offering for sale, renting, offering for rent, advertising, promoting, manufacturing or otherwise displaying of any products and/or services not authorized by Plaintiffs including, but not limited to, Themed Party Services bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Plaintiffs' Copyrighted Properties and Trademarks;

b.     using any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Plaintiffs' copyrighted properties, trademarks, and licensed trademarks in the promotion, advertisement, display, sale, offer for sale, rental, production, circulation, distribution and/or manufacturing of Themed Party Services in such fashion as to relate or connect, or tend to relate or connect, such products and/or services in any way to Plaintiffs or to any services sold, manufactured, sponsored, or approved by or connected with Plaintiffs;

c.     making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act that can or is likely to lead the trade or public, or individual members thereof, to believe that any services advertised, marketed, rented, offered for rent, sold, offered for sale, and/or distributed by Defendants are in any manner

associated or connected with Plaintiffs, or are sold, manufactured, licensed, sponsored, approved, or authorized by Plaintiffs;

       d.    engaging in any other activity constituting unfair competition with any of Plaintiffs, or constituting an infringement of any of Plaintiffs' trademarks or of Plaintiffs' rights in, or to use or to exploit said trademarks, or constituting any dilution of any of Plaintiffs' names, reputations, or goodwill;

       e.    effecting assignments or transfers, forming new entities or associations or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs a. through d.;

       f.    secreting, destroying, altering, removing, or otherwise dealing with the Themed Party Services or any books or records that may contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, renting, offering for rent, advertising, promoting, or displaying of all Themed Party Services that infringe any of Plaintiffs' Copyrighted Properties and Trademarks; and

       g.    from aiding, abetting, contributing to, or otherwise assisting anyone from infringing upon any of Plaintiffs' Copyrighted Properties and Trademarks.

       2.    Directing that Defendants deliver for destruction all Themed Party Services, including character costumes, labels, signs, prints, packages, dyes, wrappers, receptacles, and advertisements in her possession or under their control bearing any of Plaintiffs' Copyrighted Properties and Trademarks or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, heat transfers, screens, matrices, and other means of making the same.

       3.    Enter an Order requiring that Defendants delete all infringing material from their Internet marketing domains, including but not limited to, their websites located at the domains,

www.bookyourkidsparty.com and www.clownsbronx.com and their Facebook page located at the domain, www.facebook.com/pages/Professional-Kids-Entertainment.

      4.      Directing that Defendants report to this Court within thirty (30) days after a Permanent Injunction is entered to show its compliance with paragraphs 1 through 3 above.

      5.      Directing such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that Plaintiffs authorized or are related in any way to any products and/or services advertised, marketed, rented, offered for rent, sold, offered for sale, distributed, or otherwise circulated or promoted by Defendants.

      6.      Awarding to Plaintiffs from Defendants, as a result of Defendants' advertisement, marketing, renting, offering rental services, sale, offering for sale and/or distribution of the Themed Party Services bearing Plaintiffs' trademarks, three times Plaintiffs' damages and three times Defendants' profits, after an accounting, or statutory damages, should Plaintiffs opt for such relief, consisting of Two Hundred Thousand Dollars ($200,000.00) for each of the Plaintiffs' trademarks infringed upon by Defendants, and to the extent this Court concludes such infringement was willful, Two Million Dollars ($2,000,000.00) for Plaintiffs' trademarks infringed upon by Defendants pursuant to 15 U.S.C. § 1114 and § 1117.

      7.      Awarding to each Plaintiff from Defendants' advertisement, marketing, renting, offering rental services, selling, offering for sale and/or distributing the Themed Party Services, three times its damages therefrom and three times Defendants' profits therefrom, after an accounting, pursuant to 15 U.S.C. § 1125(a) and § 1117. That Plaintiffs, be awarded from Defendants found to be in violation of their copyrighted properties, Defendants' profits, or at Plaintiffs' election, an award of statutory damages pursuant to 15 U.S.C. § 504, of no less than Seven Hundred and Fifty Dollars ($750.00) nor more than Thirty Thousand Dollars ($30,000.00) per

copyrighted property infringed upon by each Defendants, at the Court's discretion, or should this Court find that such infringement was willful, that this Court, pursuant to its discretion, award statutory damages of up to One Hundred and Fifty Thousand Dollars ($150,000.00) for each copyrighted property infringed upon by each such Defendants.

8.      Awarding Plaintiff an amount up to three times the amount of actual damages sustained as a result of Defendants' violation of N.Y. Gen. Bus. Law § 349.

9.      Awarding to Plaintiffs their reasonable attorneys' fees and investigative fees pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505, and N.Y. Gen Bus. Law § 349.

10.     Awarding to Plaintiffs their costs in bringing this action.

11.     Awarding punitive damages to Plaintiffs for Defendants' willful acts of unfair competition under New York's common law.

12.     Awarding to Plaintiffs interest, including pre-judgment interest, on the foregoing sums

13.     Awarding other such relief to the Plaintiffs as this Court deems just.

Dated this 9th day of December, 2011.

PERKINS LAW OFFICE, P.C.

Patrick T. Perkins (PP 1694)
1711 Route 9D
Cold Spring, NY 10516
Telephone: (854) 265-2820
Fax:        (854) 265-2819

Attorney for Plaintiffs